UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE DIVISION

| | | |
|---|---|---|
| **CHC PORT ALLEN, LLC** | : | **DOCKET NO. 3:12-093** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **WEST BATON ROUGE PARISH COUNCIL** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is an "Application for Preliminary Injunction filed by Plaintiff CHC Port Allen, LLC" (R.#19) and "West Baton Rouge Parish Council's Motion for Summary Judgment" (R. #21). In its application for preliminary injunction, CHC Port Allen, LLC d/b/a the Crazy Horse Cabaret ("CHC") requests that this court enjoin enforcement of an ordinance approved by the Council which prohibits the sale of alcohol in certain establishments located in certain unincorporated areas of West Baton Rouge Parish on Sunday evenings. In its motion for summary judgment, the West Baton Rouge Parish Council ("WBR") maintains that there is no material issue of fact and as a matter of law, it is entitled to a dismissal of this lawsuit. WBR contends that the ordinance has a rational relationship between the Sunday Law and WBR's legitimate end. Thus, WBR maintains that the ordinance is valid.

Also before the court is a motion for oral argument (R. #43) filed by WBR. Due to the extensive briefing by the parties as well as the joint stipulations, the court finds it unnecessary to hear oral arguments on the application for preliminary injunction.

## STATEMENT OF FACTS

Following a shooting incident in 2011 at a local bar, West Baton Rouge Parish President, Riley Berthelot, proposed to WBR that it prohibit the sale of alcohol on Sundays between the hours of 10:00 p.m. to 6:00 a.m. on Monday. The Council's proposal was in response to a number of violent incidents that occurred on Sunday evenings at particular nightclubs located outside the city limits of the Town of Port Allen.[1] East Baton Rouge Parish bars were not open on Sunday evenings which caused an influx of persons from surrounding parishes looking for bars where they could purchase and consume liquor. This prompted not only violence, but also traffic problems and noise from those establishments located near residential areas. CHC maintains that it has never had a problem with alcohol related violence and submits that it is similarly-situated to a number of other licensed bars such as truck stop casinos and off track betting parlors.

On or about May 12, 2011 the West Baton Rouge Parish Council (the "Council") voted to adopt an ordinance ("Original Ordinance") to prohibit the sale of liquor on Sundays after 10:00 p.m. The Original Ordinance contained only exceptions for holidays. The purpose of the Original Ordinance was to prohibit the sale of alcoholic beverages and the closure of businesses selling alcoholic beverages on Sundays from 10:00 p.m. until 6:00 a.m. on Monday, provided that the 10:00 Sunday closing time did not apply to Super Bowl Sundays, a Sunday followed by either Memorial Day, Labor Day, the 4th of July or New Year's Day, or if the Sunday is the 4th of July. Restaurants,

---

[1] CHC Exhibit B, deposition of Riley Berthelot, pp. 19-23; exhibit E, deposition of Charlene Gordon, pp. 13-14; exhibit H, deposition of Jeff Kershaw, pp. 8-9; exhibit I, deposition of Ricky Loupe, pp. 12-15; exhibit J, deposition of Randal Mouch, pp. 23-25; exhibit K, deposition of Phillip Porto, pp. 9-11; exhibit L, deposition of Edward Robertson, pp. 10-13; exhibit M, deposition of Gary Spillman, pp. 27-31; exhibit N, deposition of Keith of Washington, pp. 23-25.

2

grocery stores, drugstores, off-track betting parlors and truck stop casinos could remain open, but they were prohibited from selling alcoholic beverages from 10:00 p.m. on Sunday to 6:00 a.m on Monday.

Prior to WBR adopting the Ordinance and during the council meeting, CHC requested that its business be exempted from the ordinance because it had no history of violence and was not located in residential areas. The WBR ultimately rejected all attempts to exempt any licensed establishments from the liquor ban citing concern for public safety.

On June 23, 2011, the Council voted to suspend enforcement of the Original Ordinance in order to allow voters in the parish to vote on the Proposition. Public notice was published in the local newspaper on July 7, 2011. The notice stated that on July 12, 2011, the Council would hold a special meeting on the following topic:

> CONSIDER RESOLUTION CALLING SPECIAL ELECTION FOR 10/22/11 ON CLOSING BAR ESTABLISHMENTS ON SUNDAYS AT SPECIFIED TIME WITH CERTAIN EXCEPTIONS PROVIDED.

The public notice failed to inform voters that the Council reconsidered its prior decision to reject all exemptions for business establishments. At the special meeting held on July 12, 2011, a Proposition was adopted which included new exemptions for restaurants, grocery stores, drugstores, "truck stop casinos" and "off-track betting parlors." There was no exemption for CHC, or a gentleman's club.

The individual members of the Council as well as the parish president have testified that they do not know how these new exemptions were included in the Proposition. Also on that date, WBR adopted a Resolution calling a Special Election to consider the Proposition. A majority of the electorate voted for the Proposition on October 22, 2011 and the Proposition was enacted in to law

on January 12, 2012.

CHC operates a gentleman's club which offers exotic dancing, serves food and liquor to patrons and offers video poker and other forms of "pay to play" entertainment.[2] The club is located in a nonresidential area in an unincorporated area of the parish, on a service road adjacent to an interstate highway.[3] CHC holds a Class AG liquor license; other holders of this type of license include truck stop casinos and off-track betting parlors. A Class AG license permits the consumption of liquor on the premises.

## LAW AND ANALYSIS

CHC requests preliminary relief to restrain, in part, the operation of the local regulatory ordinance. CHC contends that the Ordinance violates its right to equal protection and due process under the United States Constitution. In their motion for summary judgment, WBR moves to dismiss the instant lawsuit because there exists no genuine issue of material fact for trial and judgment as a matter of law is in its favor. WBR maintains that pursuant to the proper standard of review of the legislative action taken by WBR, there exist numerous conceivable legitimate purposes to prohibit the sale of alcohol on Sunday between 10:00 p.m. to 6:00 a.m Monday.[4]

The following prerequisites must be met before issuing an injunction: (1) a substantial likelihood that the movant will prevail on the merits; (2) a showing that the movant will suffer

---

[2] CHC exhibit 1, Affidavit of Casey Paul Oubre, p. 1.

[3] Id.

[4] The exceptions are on Super Bowl Sundays, a Sunday followed by either Memorial Day, Labor Day, the 4th of July or New Year's Day, or if the Sunday is the 4th of July, and further providing exemptions for restaurants, grocery stores, drugstores, off-track betting parlors and truck stop casinos.

irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest.[5]

CHC challenges WBR's decision to apply the ban on the sale of alcohol to some businesses, but not to others, and to do so pursuant to a procedure that denied CHC notice of, and consequently a hearing as to the content of the Proposition that was submitted to the electorate. WBR maintains that CHC's arguments regarding its ability to "present its case" is not supported by the law and facts of the case.

*Likelihood of success on the merits*

In determining CHC's likelihood of success on the merits, we must determine the proper standard to be applied in evaluating plaintiff's claims and apply that standard to the facts presented in the record.[6] CHC claims that under the due process and the equal protection clause of the Federal and State Constitutions, the Sunday Law is without rational basis, selective and discriminatory. WBR contends that it need only articulate "some reasonably conceivable set of facts that show a rational relationship between the Sunday Law and WBR's legitimate end.[7] In Louisiana, the state Supreme Court stated that any set of facts to justify the Sunday Law will uphold it.[8]

---

[5] Union Carbide Corp. v. UGI Corp., 731 F.2d 1186, 1191 (5th Cir. 1984).

[6] Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985); Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 334 (5th Cir. 1981).

[7] Craigmiles v. Giles, 312 F.3d 220, 223-224 (6th Cir. 2002).

[8] Guste v. K-Mart Corp., 462 So.2d 616 (La.1985), citing McGowen v. Maryland, 366 U.S. 420 (1961).

*Deprivation of due process*

CHC argues that it was deprived of due process because no public notice informed it that the Council, in crafting the Proposition for the electorate, also intended to reconsider its prior decision not to create exemptions to the ordinance. In other words, at the first council meeting, WBR decided not to create exemptions to the ordinance, but after the special meeting, without notice and/or discussion, the Proposition submitted to the voters included exemptions for restaurants, grocery stores, drugstores, off-track betting parlors and truck stop casinos. CHC complains that it was not given the opportunity to express its reasons why it should have also been exempted from the Sunday Law prohibitions because it is similar to off-track betting parlors and truck stop casinos.

Consequently, CHC argues that it was deprived of its due process right to make the case that its business should also be included in the list of exempt businesses because it also offers video poker and other forms of entertainment which is very similar to off-track betting parlors and truck stop casinos.

WBR remarks that CHC was present and made its case at the May 2011 Council meeting when the Original Ordinance was adopted. After a motion was made to specifically exempt CHC from the prohibition, the motion was defeated. WBR then submits that it was CHC's obligation to inform itself of WBR's agenda and items on the agenda as well as its obligation to attend WBR's duly noticed meetings and present CHC's views. CHC argues that when the Council decided to revisit their decision and permit some businesses to propose exemptions based upon new criteria, such as the availability of video poker, the Council should have permitted CHC the opportunity to make its case as to why it should also qualify for an exemption considering that it was located in an isolated area which offers video poker and other forms of entertainment, and has no history of

violent incidents such as those which prompted the ban.

CHC argues that the fundamental flaw with the Council's actions is that the process by which exemptions were inserted into the Proposition occurred in secret, outside of public view, prior to the July 12, 2011 meeting. CHC notes that as of this date, no Council member can describe the process by which the new exemptions were crafted or the reasons why they were added, despite unambiguous state constitutional and statutory law mandating that such decisions should be made in public and accounted for in the public record.[9] Thus, CHC maintains that the Council has failed to respect the basic tenets of Due Process. The court agrees and finds that there is a likelihood of success on the merits as to CHC's claims of being denied due process with respect to the process by which the WBR council presented the Ordinance to the electorate.

*Equal protection*

CHC complains of disparate treatment between it and truck stop casinos and off track betting parlors. CHC notes that the sole purpose of the Ordinance is to halt and/or prevent violence on Sunday evenings by closing area bars early or prohibiting the sale of alcohol. CHC argues that there is no rational basis for distinguishing the CHC bar and the bars located in local truck stop casinos and off-track betting parlors which the Ordinance exempts. WBR argues that because the primary purpose of off-track betting is horse racing, WBR can conceivably conclude it should provide horse racing to its residents during the prohibited time in recognition of the positive vote to permit this

---

[9] Citing La.Const. Art. XII, § 3; La. R.S. 42:12, 14, 16, 17; Organization of United Taxpayers and Civic Associations of Southeast Baton Rouge, Inc. v. Louisiana Housing Finance Agency, 703 So.2d 107 (La.App. 1 Cir. 11/7/97); writ denied, 709 So.2d 745 (La. 2/6/98)("The purpose of Louisiana's Open Meeting Law is to allow the public to observe and evaluate public officials, public conduct, and public institutions. It is meant to protect citizens from secret decisions made without any opportunity for public input.").

7

activity by the people of West Baton Rogue Parish. WBR also argues that because of the detailed Louisiana State Racing Regulations imposed on Off-Track Wagering Facilities, it is not necessary to impose WBR's Sunday Law on off-track betting.

WBR submits that off-track betting parlors are a form of recreation within which WBR can conceivably conclude that the State of Louisiana permits Off Track Wagering every day of the year and WBR should not interject its Sunday Law on Off Track Wagering. WBR further submits that it can conceivably conclude on the basis of detailed regulations imposed on truck stop casinos, it is not necessary to impose WBR's Sunday Law on truck stop casinos because the primary purpose of truck stop casinos is the sale of diesel to 18 wheelers, provide recreation to commercial 18 wheeler truck drivers, provide services to commercial 18 wheelers truck/trailers, gasoline to automobiles and the promotion of video poker gaming.

WBR notes that the exemption in the Ordinance and their primary purpose are as follows: restaurants (primary purpose is to sell food for on-site consumption), drug stores (primary purpose to sell prescription and non-prescription drugs), casino truck stops (primary purpose is video gaming, gasoline sales, diesel sales, 18 wheeler services, convenience store services) and off track betting parlors (primary purpose is horse racing). WBR asserts that the rationale for the Sunday Law is to reduce the probability of violence at bars and lounges, where the primary purpose is the on-site consumption of alcohol, and to encourage the safety and health of its citizens by closing bars at 10 p.m. on Sunday.

Truck stop casinos are also regulated by statute.[10] WBR correctly states that Louisiana Revised Statute 26:493 allows the political subdivisions of the State of Louisiana to regulate, but not

---

[10] La.R.S. 27:306(A)(4)(c).

prohibit, the sale of alcohol within their jurisdictions. These regulations should not be "more than is necessary for the protection of the public health, morals, safety and peace."[11] Thus, WBR contends that its enacting of the Ordinance was the exercise of a legislative action. WBR's legislative action in enacting the Ordinance is given a strong presumption of validity; any reasonably conceivable set of facts can provide a rational basis to uphold it.[12]

In McGowen v. Maryland,[13] the court recognized that the legitimate purpose of the Sunday Law is to promote public health and well being. Our Louisiana Supreme Court has held that "Sunday Laws are not, in themselves, unconstitutional."[14] The burden is on CHC to negate every conceivable basis which might support WBR's classification of the bars at issue. The Equal Protection Clause is not violated "merely because the classifications made ... are imperfect."[15] A "necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational."[16] On a motion for summary judgment, it is WBR's burden to show that CHC cannot meet its burden at trial to prove that its decision to exempt truck stop casinos and off track betting parlors lacks a rational basis. If WBR can make this showing, the burden then shifts to CHC to demonstrate that the Council is not entitled to judgment as a matter of law.

---

[11] La.R.S. 26:493.

[12] Cornerstone Christian School v. University Interscholastic League, 563 F.3d 127, 139 (5th Cir. 2009).

[13] 366 U.S. 420 (1961).

[14] Guste v. K-Mart Corp., 462 So.2d 616 (La.1985).

[15] Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir.), cert. denied, 522 U.S. 995, 118 S.Ct. 559 (1997).

[16] Doe v. Pa. Bd. of Prob. & Parole, 513 F.3d 95, 112 n.9 (3d Cir. 2008).

WBR argues that it can conceivably conclude on the basis of the detailed regulations imposed on truck stop casinos, it is not necessary to impose WBR's Sunday Law on truck stop casinos. Furthermore, it is a reasonable conclusion that the primary purpose of truck stop casinos is the sale of diesel to 18 wheelers, provide recreation and services to truck drivers, provide gasoline for automobiles and promote video poker gaming. In other words, WBR argues that it has legitimate reasons for the enactment of the Sunday Law.

CHC remarks that it does not challenge the Council's ability to implement a "blue law," but its authority, when implementing such a law, to exempt businesses that are identically situated to CHC. Specifically, CHC challenges the Council's decision to exempt bars located in truck stop casinos and off track betting parlors while subjecting CHC to this ban. CHC maintains that because the Council has chosen to create legislative classifications (between exempt and non-exempt bars) that have no rational connection to the ordinance's goal of restraining the sale and consumption of alcohol on Sunday evenings, the Council's action in granting these particular exemptions has deprived CHC of its right to equal protection of the laws.

As to the motion for summary judgment, we find that WBR has failed to prove that CHC cannot meet its burden at trial to prove that its decision to exempt truck stop casinos bars and off track betting parlor bars, while enforcing the liquor ban on what the court perceives to be a virtual identical bar at plaintiff's establishment, lacks a rational basis. The purpose of the ordinance is to curtail liquor sales in bars similarly situated in West Baton Rouge Parish. At this juncture, the court can see no rational basis in keeping with the purpose of the ordinance, to treat CHC's bar any differently from the bars operated by its exempted competitors. Accordingly, the motion for summary judgment filed by WBR will be denied.

Furthermore, as to the motion for preliminary injunction, the court finds, without deciding conclusively, that CHC has a good chance to prevail on the merits on both the due process arguments and their equal protection claim. The court notes that WBR has failed to challenge whether (1) CHC will suffer irreparable injury if the preliminary injunction is not granted, (2) the harm outweighs the harm to the opposing party if the preliminary injunction is granted, and the preliminary injunction is in the public interest. Thus, we will assume that because WBR does not challenge these other prerequisites to issuing the preliminary injunction that such prerequisites are met based on the arguments presented by CHC. We further note that WBR has failed to address the posting of security; therefore, we will require that CHC post a nominal bond of $1,000 as suggested by CHC.[17]

## CONCLUSION

Based on the foregoing, the motion for preliminary injunction shall be granted enjoining the enforcement of Ordinance No. 1 and 2 which amended and re-enacted Chapter 6, § 23(2) and Chapter 6, § 116(2) against CHC Port Allen, LLC. The court notes that in its prayer for relief in its original complaint, CHC limits its request for injunction to enjoin enforcement of the ordinance only against CHC and argument compatible with its prayer is presented at page 4 of its application for a preliminary injunction. The court will therefore limit the effect of its ruling to CHC so as not to disturb potential enforcement against other businesses which might be affected were the court not to so restrict its ruling. CHC will be required to post a $1,000 bond. The motion for summary judgment filed by WBR will be denied. The motion for oral arguments will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6th day of

---

[17] Citing a similar case which held that a $1,000 bond was sufficient. Springtree Apartments ALPIC v. Livingston Parish Council, 207 F.Supp.2d 507, 515 (M.D. La. 2001).

February, 2013.

                                                                                    _____
                                                                                    JAMES T. TRIMBLE, JR.
                                                                                    UNITED STATES DISTRICT JUDGE